UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

KENNETH MEJIAS,             :
          Plaintiff,     :
                                   :
     v.                          :   No. 5:20-cv-1435
                                  :
C&S WHOLESALE GROCERS, INC.  :
          Defendant.    :
_____

**O P I N I O N**
**Defendant's Motion to Dismiss the Amended Complaint for Failure to State a Claim,**
**ECF No. 10—GRANTED, in part, and DENIED, in part**

**Joseph F. Leeson, Jr.**                                                              **July 14, 2020**
**United States District Judge**

**I.    INTRODUCTION**

This case involves allegations of disability-based discrimination and retaliatory practices. Plaintiff Kenneth Mejias ("Mejias") was an employee of Defendant C&S Wholesale Grocers ("C&S"), located in Bethlehem, Pennsylvania. Mejias claims he was fired because of a disability and his exercise of rights and benefits under the Americans with Disabilities Act ("ADA") and Family Medical Leave Act ("FMLA"). He has filed suit against C&S asserting claims of: (1) discrimination under the ADA; (2) retaliation under the ADA; (3) failure to accommodate under the ADA; (4) hostile work environment under the ADA; (5) interference[1] under the FMLA; and (6) retaliation under the FMLA.

Before this Court is C&S' motion to dismiss for failure to state a claim in response to Mejias' Amended Complaint. For the following reasons, the motion is granted as to Mejias'

---

[1] As explained in further detail below, it is unclear whether Mejias is truly raising this claim.

ADA hostile work environment claim and an FMLA interference claims, and denied as all other claims.

## II.     BACKGROUND

### A.     Factual Allegations[2]

Mejias was hired by C&S as an order "picker" at its Bethlehem location, on or about August 31, 2011. Plaintiff's Amended Complaint ("Am. Compl."), ECF No. 8, ¶ 20. On or about July 14, 2018, Mejias was involved in a motorcycle accident that led to serious injuries. *Id.* ¶ 22. Mejias' injuries limit him in one or more life activities, including lifting, carrying, standing, and walking. *Id.* ¶ 23. Mejias is also limited in the usage of his shoulder. *Id.* ¶ 26.

Following the motorcycle accident, Mejias returned to work on November 1, 2018. *Id.* ¶ 28. At the time C&S had a "warm-up" program, where employees returning from medical leave could perform their jobs for a fixed hourly rate, instead of the normal incentive-based payment plan used by the company. *Id.* ¶ 30. Mejias opted for a "warm-up" period as a picker, so he could ease into the physical demands of the job. *Id.* ¶¶ 31-32. At this time he continued to have issues with the use of his shoulder and was more limited in this respect than members of the general public. *Id.* ¶ 29. C&S denied Mejias' request to participate in the "warm-up" program and instead assigned him to work as a trainer, which resulted in a $12/hour decrease in pay. *Id.* ¶¶ 33-34. However, C&S still expected Mejias to perform duties associated with the order picker

---

[2]     These facts are taken from the Amended Complaint and accepted as true, with all reasonable inferences drawn in Mejias' favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018).  Except where necessary for context, the Court's recitation of the allegations of the Amended Complaint does not include conclusory assertions or legal contentions, neither of which need be considered by the Court in determining the viability of Mejias' claims.  *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

position, and without just compensation. *Id.* ¶ 35. Mejias viewed this as a failure to accommodate his request, because he continued to act as an order picker for C&S. *Id.*

When Mejias requested to return to his old order picker position, supervising employees for C&S categorized Mejias as a "liability," and denied his request. *Id.* ¶¶ 36-39. At various times between November 2018 and March 2019, Mejias complained to C&S management that he felt he was being treated differently by the company since his accident, and that he feared C&S was looking to "get rid of him." *Id.* ¶ 40. These claims were never investigated by C&S. *Id.* ¶ 41. Mejias also complained on various occasions of issues he was having with a coworker, to which C&S also failed to respond and/or investigate. *Id.* ¶ 43.

On February 24, 2019, Mejias was assaulted by this coworker, and he responded in a manner of self defense. *Id.* ¶ 42. Mejias contends that C&S had never fired an employee for a physical altercation in which he or she was defending him or herself. *Id.* ¶ 45. However, on March 3, 2019, C&S terminated Mejias. *Id.* ¶ 44.

### B. Procedural Background

Mejias commenced this action on March 16, 2020. ECF No. 1. C&S responded with a motion to dismiss on April 6, 2020. ECF No. 5. On April 27, 2020, Mejias filed an Amended Complaint in response to C&S's motion to dismiss. ECF No. 8. Currently, before this Court is C&S's second motion to dismiss for failure to state a claim upon which relief can be granted, which was filed on May 11, 2020. ECF No. 10.

### III. LEGAL STANDARD

In bringing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the burden is on the defendant to demonstrate that the plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d

744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). The plaintiff has only stated a plausible claim if "the '[f]actual allegations . . . raise a right to relief above the speculative level.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678 (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

IV.   ANALYSIS

As noted, Mejias brings six claims: (1) discrimination under the ADA; (2) retaliation under the ADA; (3) failure to accommodate under the ADA; (4) hostile work environment under the ADA; (5) interference under the FMLA; and (6) retaliation under the FMLA. C&S argues that Mejias fails to establish the prima facie elements of disability-based discrimination required to survive a Rule 12(b)(6) motion to dismiss.

At the outset, it is worth noting that with respect to certain claims brought under the ADA and FMLA, a plaintiff need not plead the prima facie elements to survive a motion to dismiss.

*See Dreibelbis v. Cnty. of Berks*, No. 5:19-cv-494, 2020 WL 605884, at *7 (E.D. Pa. Feb. 7, 2020). In *Dreibelbis v. Cnty. of Berks*, this Court explained why claims of ADA and FMLA discrimination and retaliation only require facial plausibility. *See Dreibelbis*, 2020 WL 605884, at *6 (explaining that "the plaintiff '[is] not required to plead a prima facie case in order to survive a motion to dismiss.'" (quoting *Kelly v. H.D. Supply Holdings, Inc.*, No. CIV. 14-372, 2014 WL 5512251, at *3 (D.N.J. 2014))); *see Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511 (2002) (explaining that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" of employment discrimination). For a claim to be "facially plausible," it must be the case that the allegations state "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s]." *Dreibelbis*, 2020 WL 605884, at *7 (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).  As in *Dreibelbis*, Mejias "need not plead all of the prima facie elements of a discrimination [or retaliation] claim 'because those elements may not be required at trial.'"[3] *Dreibelbis*, 2020 WL 605884, at *7 (quoting *Kelly*, 2014 WL 5512251, at *4). C&S is therefore incorrect to the extent it argues that Mejias must plead prima facie discrimination.

### A. Discrimination Under the ADA

As discussed above, Mejias is not required to plead the prima facie elements of an ADA discrimination claim; rather, he need only plead facts raising a reasonable expectation that discovery would lead to information capable of satisfying those elements. The Court therefore looks to those elements for guidance.  The prima facie elements of an ADA discrimination claim

---

[3]     This is because if a discrimination plaintiff "is able to produce *direct* evidence of discrimination, he may prevail [at trial] without proving all the elements of a prima facie case." *Swierkiewicz*, 534 U.S. at 511 (emphasis added).

require a plaintiff to allege that he is"(1) disabled within the meaning of the ADA, (2) can perform essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of his disability." *Drummer v. Trustees of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 682 (E.D. Pa. 2017) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)); *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576 (3d Cir. 1998).

The ADA prohibits employers from discriminating against qualified individuals "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A qualified individual is anyone who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). As is relevant here, "termination is an adverse employment action." *Bossi v. Bank of Am.*, No. 3:14-CV-02301, 2016 WL 4446444, at *3 (M.D. Pa. Aug. 19, 2016).

C&S' primary contention with respect to Mejias' ADA discrimination claim is that Mejias has failed to adequately plead that he suffered from a disability at the time of his termination. The Court disagrees. Mejias makes clear that he suffered some physical injury as a result of his motorcycle accident which left him unable to perform his order picker obligations. Mejias references limitations to his ability to walk or carry certain items, as well as limitations in the use of his shoulder following his motorcycle accident. *See* Am. Compl. ¶ 23. Although these allegations are somewhat thin, in the Court's view they are sufficient at this stage of the

litigation. They state that Mejias suffered "a physical . . . impairment that substantially limit[ed] one or more [of his] major life activities." 42 U.S.C. § 12102(2). Moreover, Mejias alleges that he informed C&S of that fact. *See* Am. Compl. ¶ 23.

With respect to the other elements of Mejias' ADA discrimination claim—that he was a "qualified individual" and that he suffered an "adverse employment action"—the Court is satisfied that Mejias' allegations are sufficient to put C&S on notice and to indicate that discovery can reasonably be expected to lead to information capable of satisfying these elements. *See* Am. Compl. ¶ 27 (alleging that Mejias was capable of satisfying the duties of a picker after the accident with an accommodation), *id.* ¶ 49 (alleging that he suffered the adverse employment action of termination). For the above reasons, Mejias' ADA discrimination claim survives C&S' motion to dismiss.

B.     **Retaliation Under the ADA**

For the same reasons he is not required to plead a prima facie claim of discrimination, Mejias is not required to plead the prima facie elements of an ADA retaliation claim. *See Dreibelbis*, 2020 WL 605884, at *11 n.23. Nonetheless, the Court is satisfied that he has done so here.

"A prima facie claim of retaliation under the ADA requires allegations that (1) a plaintiff be engaged in a 'protected activity,' (2) the plaintiff be subjected to an adverse employment action by the County, and (3) a causal connection between the protected activity and the adverse employment action exists." *Dreibelbis*, 2020 WL 605884, at * 11 (citing *Monaco v. Limestone Veterinary Hosp.*, 152 F. Supp. 3d 253, 263 (D. Del. 2016)). Under the ADA, seeking an accommodation is a "protected activity." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010). Additionally, for purposes of retaliation, a person need not be a "qualified

individual" with a disability, as defined by the ADA, in order to bring a claim. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 498 (3d Cir. 1997).

Mejias has satisfied his pleading burden here: He has alleged that he was engaged in a protected activity, *i.e.*, he sought an accommodation for his disability—the "warm up" period, Am. Compl. ¶ 31; that he suffered an adverse employment action, *i.e.*, he was terminated, *id.* ¶ 44; and that a causal relationship between the two existed, *see id.* ¶ 46. This claim therefore survives C&S' motion to dismiss.

### C. Failure to Accommodate Under the ADA

Mejias' Amended Complaint appears to assert an ADA "failure to accommodate" claim. *See, e.g.*, Am. Compl. ¶¶ 46, 47, 61. While acknowledging that this claim is unclear in Mejias' Amended Complaint, C&S nonetheless moves to dismiss it. *See* Def.'s Mem., ECF No. 10, at 10-11.

Under the ADA, an employer must "reasonably accommodate an employee's disability." *Sube v. Cty. of Allentown*, 974 F. Supp. 2d 754, 764 (E.D. Pa. 2013) (citing *Williams v. Philadelphia Hous. Auth. Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004)). Reasonable accommodations can take various forms, such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." 42 U.S.C. § 12111(9). "Moreover, an employer's failure to engage, in good faith, in an interactive process to determine whether an accommodation can reasonably be made for a disabled employee constitutes prohibited discrimination." *Sube*, 974 F. Supp. 2d at 765 (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311-12 (3d Cir. 1999)).

In order to state a claim for failure to accommodate under the ADA, a plaintiff must allege: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor*, 184 F.3d at 319-20 (citations omitted).

Here, Mejias has stated the prima facie elements of his failure to accommodate claim. He alleges that C&S knew about his disability, Am. Compl.. ¶ 23; that he requested an accommodation, *id.* ¶ 31; that C&S did not make a good faith effort to accommodate him, *id.* ¶ 33; and that he could have reasonably been accommodated, *id.* ¶ 27. Specifically, Mejias put C&S on notice of his disability by requesting FMLA leave. *Id.* ¶ 23. He requested the company-wide "warm-up" period as an accommodation to his disability. *Id.* ¶ 31. And in reassigning Mejias to a new position without discussion rather than allowing a "warm-up" period in his former position or engaging in an interactive process, C&S did not make a good faith effort to accommodate him.[4] *Id.* ¶ 33.

In the Court's view, Mejias has sufficiently pleaded facts to state the prima facie elements of his failure to accommodate claim. Consequently, his failure to accommodate claim survives C&S' motion to dismiss.

D.  **Hostile Work Environment Under the ADA**

C&S does not address Mejias' claim of a hostile work environment under the ADA. This is most likely because Mejias does not make clear in his Amended Complaint that he is bringing

---

[4] C&S argues that placing Mejias in a different role was a reasonable accommodation to ease him back into the physical demands of his job. Def.'s Mem. at 12. This is a factual issue that the Court does not resolve at this stage of the litigation.

such a claim. To the extent there exists a hostile work environment claim, it is hidden within "Count I – Violation of the ADA." Am. Compl. ¶ 61. In view of the "liberal" pleading standard under the Federal Rules of Civil Procedure, especially in cases of employment discrimination, the Court in its discretion construes Mejias' Amended Complaint to be asserting an ADA hostile work environment claim. *See Dreibelbis*, 2020 WL 605884, at *11 (citing *Evancho v. Fisher*, 423 F.3d 347, 352 (3d Cir. 2005)); *see Swierkiewicz*, 534 U.S. at 511.

"Although the Third Circuit has not definitely decided whether a hostile work environment cause of action exists under the ADA, it has presumed the existence of such a claim, and numerous district courts in this circuit have concluded that such claims are actionable under the ADA." *Mercer v. Se. Pa. Transit Auth.*, 26 F. Supp. 3d 432, 443 n.5 (E.D. Pa. 2014), *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015).  To state a claim under the ADA for a hostile work environment, an employee must allege "that he suffered intentional discrimination because of his disability; the discrimination was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment'; the discrimination detrimentally affected him; and it would have detrimentally affected a reasonable person in his position." *Mercer*, 26 F. Supp. 33 at 443 (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999) (collecting cases)).

Importantly, workplace conduct must be viewed in its entirety. In examining alleged "severe or pervasive" hostility in a workplace, the court must "'look[ ] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998) (quotation omitted)).

Comments made in jest, or isolated incidents "will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark Cty. Sch. Dist.*, 532 U.S. at 271 (quoting *Faragher*, 524 U.S. at 788).

Mejias' allegations do not rise to the level of "severe and pervasive" as required to plead a hostile work environment claim under the ADA. A single instance of workplace discord is not enough to constitute a hostile work environment.[5] As a result, Mejias' hostile work environment claim fails.

E.     **Claims Under the FMLA**

"The FMLA contains two relatively distinct types of provisions. First, it creates a series of prescriptive substantive rights for eligible employees, often referred to as the 'entitlement' or 'interference' provisions which set floors for employer conduct." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)). "Additionally, the FMLA provides protection against discrimination based on the exercise of these rights, often referred to as the 'discrimination' or 'retaliation' provisions." *Callison*, 430 F.3d at 119 (citing 29 U.S.C. § 2615(a)).

1.     ***FMLA Interference***

When employees invoke rights granted under the FMLA, employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)). To state a claim of "interference" under the FMLA, a plaintiff must allege that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her

---

[5]     Mejias' allegations on this point appear to be limited to supervising members of C&S considering Mejias to be a "liability." Am. Compl. ¶ 37.

intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhully*, 755 F.3d 185, 191-92 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)). Stated simply, in order to assert a viable interference claim, an "employee merely needs to show [he] was entitled to benefits under the FMLA and that [he] was denied them." *Hofferica v. St. Mary Med. Ctr.*, 817 F. Supp. 2d 569, 576 (E.D. Pa. 2011) (quoting *Thurston v. Cherry Hill Triplex*, 2008 WL 9374284, at *11 (D.N.J. 2008)).

Although C&S seems to accept that Mejias is pleading a claim of FMLA interference, *see* Def.'s Mem. at 7, it is less than clear to the Court that he is doing so. Nevertheless, the Court is satisfied that any such claim fails for the simple reason that there are no allegations in the Amended Complaint that C&S interfered with any of Mejias' rights *under the FMLA*.

Critically, neither being denied a reasonable accommodation under the ADA, nor being the target of discrimination after requesting and receiving FMLA leave—the only two possible bases for a claim here—constitute a denial of FMLA benefits. *See Ross*, 755 F.3d at 192 ("Although Ross argues that his termination and the Addendum to his PIP—actions which were taken after his FMLA leave—amount to a denial of FMLA benefits, we have made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld. . . . Ross's argument that Gilhuly interfered with his entitlement to take FMLA leave free from later discrimination confuses interference with retaliation and is thus misdirected.").

Moreover, Mejias' allegation that C&S "interfered with entitlements guaranteed to Plaintiff by the FMLA and discriminated against him because he had requested and used FMLA leave," Am. Compl. ¶ 68, fatally undermines any interference claim, as it concedes that he in fact

12
071420

requested and received FMLA leave. Therefore, in the absence of any allegation to the contrary, there can be no inference that he was denied FMLA leave.

Based on the above, any FMLA interference claim contained in the Amended Complaint fails to survive C&S' motion to dismiss.

### 2. *FMLA Retaliation*

For reasons already discussed, Mejias does not need to allege the prima facie elements of retaliation under the FMLA. However, they serve as guideposts. "To establish a prima facie case of retaliation under the FMLA, an employee must prove that '(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights.'" *Caplan v. L Brands/Victoria's Secret Stores, LLC*, 210 F. Supp. 3d 744, 759 (W.D. Pa. 2016) (quoting *Lichtenstein*, 691 F.3d at 301-02), *aff'd sub nom. Caplan v. L Brands/Victoria's Secret Stores*, 704 F. App'x 152 (3d Cir. 2017).

Unlike his FMLA interference claim, Mejias has sufficiently pleaded an FMLA retaliation claim. He alleges that he invoked his FMLA right to leave, Am. Compl. ¶ 23; suffered an adverse employment action through his termination, *id.* ¶ 44; and that his termination was a direct result of his request for and taking of FMLA leave, *id.* ¶ 49. Mejias has therefore sufficiently put C&S on notice of the basis for his retaliation claim, and, in the Court's view, pleaded facts that could reasonably be expected to lead to further discovery of a causal relationship between Mejias' requesting of FMLA leave and his termination. This claim survives C&S' motion to dismiss.

V.    CONCLUSION

For the reasons discussed herein, C&S' Rule 12(b)(6) motion to dismiss is granted as to Mejias' claims of hostile work environment under the ADA and interference under the FMLA, and denied as to his claims of discrimination, retaliation, and failure to accommodate under the ADA, as well as his claim of retaliation under the FMLA.

A separate Order follows this Opinion.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge